The document below is hereby signed.

Signed: January 11, 2021



_S. Martin Teel Jr._ (signature)

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| EVERALD FITZGERALD THOMPSON, | ) | Case No. 19-00132 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| BARBARA MCNALLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. |
| EVERALD FITZGERALD THOMPSON, | ) | 19-10017 |
| | ) | Not for publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

The plaintiff, Barbara McNally, has filed a *Second Amended
Adversarial Complaint for Determination of Dischargeability and
Objections to Debtor's Request for Discharge Pursuant to Sections
523 and 727 of the Bankruptcy Code* (Dkt. No. 31) ("*Complaint*").
The defendant, Everald Fitzgerald Thompson, the debtor in the
above-indicated bankruptcy case, has filed a *Motion to Dismiss or*

*for Summary Judgment of Plaintiff's Second Amended Adversarial Complaint* (Dkt. No. 34).  McNally filed an *Opposition* (Dkt. No. 35).  After consideration of these filings, McNally's *Motion* will be granted in part and denied in part.  Specifically, the *Motion* will be granted in part and denied in part with respect to Count IV (§ 523(a)(6)).  The *Motion* will be denied with respect to Counts I (§ 523(a)(2)(A)), II (§ 523(a)(2)(B)), III (§ 523(a)(4)), V (§ 727(a)(2)), and VI (§ 727(a)(4)).

I

## RULE 12(b)(6) STANDARDS

Thompson moves to dismiss the *Complaint* under Fed. R. Civ. P. 12(b)(6) on the basis that it fails to state a claim upon which relief can be granted.[1]  "'[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'  Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully,' but it is not a 'probability requirement.'  A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Banneker*

---

[1]  Thompson's motion seeks summary judgment in the alternative.  However, the motion does not set forth a statement of material facts not in genuine dispute as required by LBR 7056-1, and otherwise does not provide a basis for granting summary judgment.

*Ventures, LLC. v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

citations omitted)).

As noted in *Pace v. Wells Fargo Bank, N.A.*, No. 19-cv-1706,

2020 WL 1667658, at *5 (D.D.C. Apr. 3, 2020):

> On a Rule 12(b)(6) motion, the Court considers only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original; internal quotation omitted). However, the Court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations and internal quotation marks omitted). Therefore, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217–18 (D.D.C. 2012) (citations and internal quotation marks omitted).

"A complaint seeking to have a debt declared nondischargeable for

fraud . . . is subject to the heightened pleading requirements of

Fed. R. Bankr. P. 7009 and Fed. R. Civ. P. 9(b)." *Jones v.*

*Holland (In re Holland)*, Adv. Pro. No. 12-10040, 2013 WL 2190164,

at *3 (Bankr. D.D.C. May 21, 2013) (citing *Fledderman v. Glunk*

*(In re Glunk)*, 343 B.R. 754, 757 (Bankr. E.D. Pa. 2006)).  "[I]n

alleging fraud the plaintiff must provide more than conclusory

statements that the defendant's actions were fraudulent and

deceptive." *Id.* (quoting *McQueen v. Woodstream Corp.*, 28 F.R.D.

3

73, 78 (D.D.C. 2008)). "[T]he circumstances [of the alleged fraud] that must be pleaded with specificity are matters such as the time, place, and contents of the false representations, the misrepresented fact and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Poblete v. Rittenhouse Mortg. Brokers*, 675 F. Supp. 2d 130, 135 (D.D.C. 2009) (quoting *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 552 (D.C. Cir. 2002)). However, a motion to dismiss a complaint under §§ 523(a) and 727(a) is not favored in light of the "fact-intensive nature of such complaints . . . involving fraud and misrepresentation, render[ing] them poor candidates for summary pre-trial disposition." *See In re Glunk*, 343 B.R. at 758 (quoting *Bank of Chester County v. Price (In re Price)*, 1994 WL 142373 at *2 (Bankr. E.D. Pa. 1994)). "The purpose of Rule 9(b), like the general pleading standard, is simply to ensure that there is sufficient substance to the allegations to both afford the defendant the opportunity to prepare a response and to warrant further judicial process." *Owens v. Bank of America*, No. 17-cv-2110, 2018 WL 4387572, at *4 (D.D.C. Sept. 14, 2018) (quoting *CUMIS Ins. Soc., Inc. v. Clark*, 318 F. Supp. 3d 199, 209 (D.D.C. 2018)).

In analyzing the various counts of the *Complaint* to see if they pass muster under Rule 12(b)(6), I will treat the non-conclusory factual allegations of the *Complaint* as true.

4

II

COUNT I SEEKING RELIEF UNDER § 523(a)(2)(A)

McNally makes claims against Thompson arising from Thompson's obtaining a rental discount from her while he lived in her property at 52 Hamilton Street, N.W., Washington, D.C. from October 2012 through June 2015.[2]  McNally contends in Count I that Thompson obtained that discount by misrepresenting the extent of repairs and improvements he had made to the home without prior reimbursement.  McNally asserts a monetary claim under District of Columbia law based on this alleged fraud, and asserts that the claim is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) of the Bankruptcy Code provides for an exception to a debtor's discharge for any debt for property obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).  An exception based on a false representation must show:

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;
(2) knowledge of the falsity or deceptiveness of his statement or conduct;
(3) an intent to deceive;
(4) justifiable reliance by the creditor on the debtor's

---

[2]  McNally alleges that Thompson began residing in the property in 2005 and continued to live there until December 2017, but it is for the period of October 2012 through June 2015 that she asserts that Thompson received a rental discount.

> statement or conduct; and
> (5) damage to the creditor proximately caused by its
> reliance on the debtor's statement or conduct.

*Ventura v. Donna (In re Donna)*, Bankr. Appeal No. 17-2217, 2019 WL 5550596, at *11 (D.D.C. Oct. 28, 2019) (quoting *In re Holland*, 2013 WL 2190164, at *3); *Andrews v. McCarron (In re Vincent Andrews Mgmt. Corp.)*, 507 B.R. 78, 88 (D. Conn. 2014) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000); and quoting a similar standard set forth in *Schepperley v. DePinna (In re DePinna)*, 450 B.R. 337, 360 (Bankr. D. Conn. 2011)).

The claim of fraud must additionally pass muster under District of Columbia law,[3] but the elements for such a claim appear to be the same under both § 523(a)(2)(A) and District of Columbia law, at least in the context of non-commercial settings. The elements of civil fraud in the District of Columbia are:

> (1) a false representation;
> (2) of a material fact;
> (3) made with knowledge of its falsity;
> (4) with an intent to deceive; and
> (5) detrimental reliance.

*Frankeny v. District Hosp. Partners, LP*, 225 A.3d 999, 1004 n.5

---

[3] The Supreme Court's opinion in *Field v. Mans*, 516 U.S. 59 (1995), prescribed a definition based on the "generally shared common law," *id.* at 73-74, and looked to the Restatement (Second) of Torts (1976) as "the most widely accepted distillation of the common law of torts," *id.* at 70, "rather than [to] the law of any particular State," *id.* at 70 n.9. However, nonbankruptcy law (here, District of Columbia law) controls whether the debt exists in the first place, and it may (or may not) set a different definition of fraud.

(D.C. 2020) (citing *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977)).  *See also Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 555 (D.C. 2016) (quoting *In re Estate of Nethken*, 978 A.2d 603, 607 (D.C. 2009)).  "At least in cases involving commercial contracts negotiated at arm's length . . . the defrauded party's reliance [must] be reasonable." *Drake v. McNair*, 993 A.2d 607, 622 (D.C. 2010) (quoting *Hercules & Co. v. Restaurant Corp.*, 613 A.2d 916, 923 (D.C. 1992)).  Outside of those situations, reliance must be justifiable.  *See Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1238 (D.C. 2005); *Restatement (Second) of Torts* §§ 537, 540-541.

Recently, the D.C. Court of Appeals suggested that reliance must more generally be reasonable.  In *Morris v. Morris*, 110 A.3d 1273, 1274 (D.C. 2015), the Court of Appeals concluded that the plaintiffs had not shown reliance, but in passing noted that "[i]n order to demonstrate that they reasonably relied on that representation, Kenneth and Keith Morris would have to show among other things that they were 'ignoran[t] of [its] falsity.' *Shappirio v. Goldberg*, 20 App. D.C. 185, 194 (1902).").  Because there was no reliance in the first place, the Court of Appeals did not hold that reliance must be reasonable in all fraud cases or otherwise suggest that the court was expanding the reasonableness requirement from its *Drake* line of cases (imposing

a requirement of reasonable reliance "in cases involving commercial contracts negotiated at arm's length"). Instead, the facts in *Morris* demonstrated that reliance on the representation made there would have been so unreasonable that there could not have been even actual reliance, noting that reliance on a false representation cannot be reasonable where a claimant doubts its veracity, where it is not a "substantial" deciding factor in the claimant's subsequent detrimental course of action, or where the representation is "preposterous or obviously false." *Id.* (quoting, *inter alia*, *Va. Acad.*, 878 A.2d at 1238; *In re Estate of McKenney*, 953 A.2d 336, 343 (D.C. 2008)). Those requirements apply as well to determining whether there was justifiable reliance. *See Restatement (Second) of Torts* § 537 (reliance must be justifiable) and § 541 ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him."). It is thus best to read *Morris* as guidance on what constitutes a showing of reliance in the first place, rather than as a holding on the requisite level of reliance that modifies either *Virginia Academy* or *Drake*.

McNally has pled facts showing that she relied on one or more alleged representations and that her reliance was

justifiable with respect to the representations.[4]  The *Complaint*
alleges the elements of a fraud claim with sufficient heft that
the § 523(a)(2)(A) claims ought to move forward.  Paragraph 184
alleges that Thompson intentionally misrepresented in the fall of
2012 that he had made repairs and improvements to the property at
issue at his own cost.  Paragraph 185 alleges that Thompson never
made such repairs, a fact of which, it may be inferred, Thompson
was aware when he made the alleged representation.[5]  Paragraphs
186 and 188 allege an intent to deceive and an injury proximately
arising from the misrepresentation.

    With respect to the issue of justifiable reliance, it must
be noted that since at least 1992, Thompson has served as
McNally's attorney in all of her affairs pertaining to real
estate.  Moreover, Thompson has acknowledged in his complaint for

---

[4]  I do not view the transactions between McNally and
Thompson to have been commercial transactions as in *Drake v.
McNair*.  To the extent that the fraud claim could be viewed as
relating to a commercial transaction, a requirement of reasonable
reliance would apply.  *Drake v. McNair*, 993 at 622.  For reasons
discussed below with respect to the claim of nondischargeability
under § 523(a)(2)(B) (which has a requirement of reasonable
reliance), I view the complaint as adequately pleading reasonable
reliance as to the claims under § 523(a)(2)(A).

[5]  Thompson's knowledge of the alleged falsity need not be
alleged with particularity.  Fed. R. Civ. P. 9(b).  The facts
alleged plausibly imply that Thompson would have been aware of
what repairs he did or did not personally perform prior to 2012.
McNally will need to prove both that Thompson did not perform the
represented repairs, and that Thompson was aware that he had not
performed such repairs to the Hamilton Street property when he
allegedly made the contrary representation.

declaratory relief (*Compl.* Ex. 4) that he filed against McNally
in the Superior Court of the District of Columbia in 2014 that he
and McNally were family friends.  Paragraph 187 of the
*Complaint* cites the alleged misrepresentation regarding repairs
as a basis upon which McNally justifiably relied in agreeing to
Thompson's tenancy at a below-market rate.  Specifically,
paragraph 187 alleges that McNally "allow[ed] [Thompson] to
reside at 52 Hamilton Street for $600 per month" and paragraph 55
alleges that Thompson thereby resided at this property for $600
per month from October 2012 until June 2015.  Paragraph 62
concedes that there was no written lease for Thompson's tenancy,
but in October 2012 Thompson sent McNally a letter enclosing a
$600.00 payment and a proposed lease, Exhibit 2 to the *Complaint*,
which proposed $600.00 per month as the monthly rent and offered
the "substantial repairs" Thompson allegedly made on the property
as consideration for a right of first refusal if McNally were to
decide to sell the property.  A 2014 letter from Thompson, filed
as Exhibit 1 to the *Complaint*, confirms that $1,800.00 was the
rent but states that Thompson has "been paying a lesser amount in
the amount of $1,000.00 stemming from offsets to the rent related
to my out of pocket expenses for the premises."  While this 2014
letter is not a representation on which McNally could have relied
in 2012, it supports the plausibility of the allegations
regarding what occurred in 2012 even though it refers to a

10

reduced rent of $1,000.00 instead of $600.00: whatever the amount being paid, it was a reduced rent.

The *Motion to Dismiss* challenges the allegations that Thompson made no repairs, and that McNally relied on the alleged representation to that effect—pointing to ostensible inconsistencies in the *Complaint*.  However, those are matters of fact that, at trial, McNally will need to show and that Thompson may attempt to refute.  McNally will need to show at trial that Thompson made no meaningful unreimbursed repairs, that Thompson knowingly made one or more contrary representations, that she relied on those alleged representations in substantial part in agreeing to his paying reduced rent, and that her reliance on that representation in agreeing to a reduced rent was

justifiable.[6]  Under District of Columbia law, such fraud must be

established by clear and convincing evidence.  *Bennett v.*

*Kiggins*, 377 A.2d at 59.

III

COUNT II SEEKING RELIEF UNDER § 523(a)(2)(B)

Count II alleges that Thompson obtained his tenancy at a

reduced rate by misrepresenting his financial inability to pay a

higher rate, and alleges that the debt arising from this fraud is

nondischargeable under 11 U.S.C. § 523(a)(2)(B).  Section

523(a)(2) in relevant part precludes discharge of a debt:

> for money, property, services, or an extension, renewal,
> or refinancing of credit, to the extent obtained by—
> . . .
>             (B) use of a statement in writing—
>                 (i) that is materially false;
>                 (ii) respecting the debtor's or an

---

[6] McNally's allegation that her reliance was justifiable is arguably conclusory.  However, in light of the adequacy of the allegations as to the other elements needed to support a claim under § 523(a)(2)(A), and the relative modesty of the justifiable reliance standard, the proper course is to permit this count to proceed rather than to require a further amendment of the *Complaint. See Discover Bank v. Warren (In re Warren),* 486 B.R. 704, 708-09 (D.S.C. 2013) (reversing a dismissal based on a conclusory allegation of justifiable reliance);  *Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434, 444 (Bankr. E.D. Pa. 2013) (*citing Field*, 516 U.S. at 71 (stating that justifiable reliance standard requires reference to a creditor's knowledge and intelligence to determine whether it should have been apparent to the creditor that it was being deceived)); *cf. In re Glinka v. Dartmouth Banking Co. (In re Kelton Motors Inc.)*, 121 B.R. 166, 189 (Bankr. D. Vt. 1990) (allowing a claim that arguably failed to meet Rule 9 to proceed where the plaintiff otherwise "alleged more than enough facts to clue Defendants into the nature of the allegations against them" and in light of the practice to liberally allow amendments).

12

> insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

"Section 523(a)(2)(B) expressly requires not only reasonable reliance but also reliance itself; and not only a representation but also one that is material; and not only one that is material but also one that is meant to deceive." *Field*, 516 U.S. at 68.

For purposes of determining whether a writing is materially false with respect to Thompson's condition, the writing should be examined in the context of the overall picture it paints. *See Cong. Fed. Credit Union v. Pusateri (In re Pusateri)*, 432 B.R. 181 (Bankr. W.D.N.C. 2010); *Collier on Bankruptcy* ¶ 523.08[2][b] (Richard Levin & Henry J. Summer eds., 16th ed. through Rel. 154-6/2020) (citing *Community Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 930 (Bankr. N.D. Ill. 1992)). While the letter Thompson allegedly sent McNally on October 10, 2012, *Compl.* Ex. 2, did not explicitly represent that his financial condition precluded his paying more than $600 per month, the overall picture that the letter painted was that he could not afford to pay a higher rate.  Thus the letter serves as an alleged representation by Thompson that he could pay no more than $600 per month as of the fall of 2012.

McNally contends that this letter further represented that Thompson's financial condition precluded payments of $1,800 per

month, and alleges that the representation was false. *Compl.* pars. 47, 194-195.  Thus McNally has alleged that Thompson had the financial resources to pay $1,800 per month when he purportedly represented otherwise on October 10, 2012.

McNally has not gone further to allege specific facts—such as of Thompson's income, assets, or expenses—that, if proved, would reasonably imply that Thompson held sufficient resources to pay $1,800 per month.  *See Banneker Ventures, LLC.*, 798 F.3d at 1129 (defining the types of facts that must be alleged to state a plausible claim); *Harbinger Capital Partners LLC v. Ergen (In re LightSquared, Inc.)*, 504 B.R. 321, 345-47 (Bankr. S.D.N.Y. 2013) (dismissing for insufficient allegations to show falsity).  *But see Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*, Case No. 18-cv-12255, 2019 WL 6498094, at *7-8 (S.D.N.Y. Dec. 3, 2019) (allowing general allegations of falsity when accompanied by other particular allegations).  However, such facts as these, establishing the debtor's financial condition, are of a nature that a plaintiff might not be reasonably aware of their particulars prior to discovery.  *See Livaditis v. Ginsberg (In re Ginsberg)*, Bankr. No. 08-30836, Adv. Pro. No. 09-120, 2009 WL 4036559, at *5 (Bankr. N.D. Ill. Nov. 20, 2009) (allowing the specifics as to falsity to be developed through discovery); *McQueen*, 28 F.R.D. at 79 ("Rule 9(b) is not meant to supplant discovery.").  At the pleading stage, the allegation that

14

Thompson could have paid $1,800 per month is sufficient to give
adequate notice to Thompson and thus to allow McNally to seek
evidence to prove it.

The adequacy of pleading McNally's reasonable reliance on
the October 10, 2012 letter is cloudier.  "A plaintiff must show
that there was some basis for [her] to have relied on the alleged
misstatement or omission."  *Terra Securities ASA Konkursbo v.
Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 (S.D.N.Y. 2011).
Reasonableness is a totality of the circumstances test that
focuses on:

> (1) whether the creditor had a close personal
> relationship or friendship with the debtor;
> (2) whether there had been previous business dealings
> with the debtor that gave rise to a relationship of
> trust;
> (3) whether the debt was incurred for personal or
> commercial reasons;
> (4) whether there were any "red flags" that would have
> alerted an ordinarily prudent lender to the possibility
> that the representations relied upon were not accurate;
> and
> (5) whether even minimal investigation would have
> revealed the inaccuracy of the debtor's representations.

*Douglas v. Kosinski (In re Kosinski)*, 424 B.R. 599, 611 (B.A.P.
1st Cir. 2010) (separate lines for each element added).  *See also
Terra Securities,* 820 F. Supp. 2d at 545 (considering "the entire
context" including the relative "sophistication of the parties").
These criteria ought to be applied to reflect that "reasonable"
is the most demanding of the three levels of reliance required of
an "ordinarily prudent" creditor.  *See Colombo Bank v. Sharp (In*

15

*re Sharp)*, 340 Fed. Appx. 899, 908 (4th Cir. 2009) (noting the
"more demanding" reasonable reliance assessment based on *Field v.
Mans*, 516 U.S. at 61, 66); *In re Kosinski*, 424 B.R. at 611-13
(rejecting that the parties' relationship or relative
sophistication can fully excuse failure to address red flags or
minimally investigate); *USAmeriBank v. Strength*, Case No.
16-CV-995, 2017 WL 4767694, at *10 (M.D. Ala. Oct. 12, 2017)
(reasonableness is the "application of a community standard of
conduct to all cases." (quoting *Field*, 516 U.S. at 71)); *Hurston
v. Anzo (In re Anzo)*, 562 B.R. 819, 835-36 (Bankr. N.D. Ga. 2016)
(rejecting an absence of bad faith standard for reasonableness);
*First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 610 (8th Cir.
1997); *Guess v. Keim (In re Keim)*, 236 B.R. 400, 402-03 (B.A.P.
8th Cir. 1999); *Kovens v. Goodwich (In re Goodwich)*, 517 B.R.
572, 591-92 (Bankr. D. Md. 2014).  In the arena of fraud in
commercial transactions, requiring reasonable reliance, District
of Columbia takes a similar but possibly more stringent view.
See *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 934 (D.C.
1992) ("One cannot close his eyes and blindly rely upon the
assurances of another absent some fiduciary relationship or
emergency" (quoting *Mgmt. Assistance, Inc. v. Comput. Dimensions,
Inc.*, 546 F. Supp. 666, 672 (N.D. Ga. 1982)).

    Some decisions take a more lenient view that reasonable
reliance is a low standard or is present if there was good faith

reliance. *See Veritex Cmty. Bank v. Osborne (In re Osborne)*, 951
F.3d 691, 704 (5th Cir. 2020)  951 F.3d 691, 697-99 (5th Cir.
2020) ("reasonable reliance requirement is a low hurdle for
creditors to satisfy . . . primarily meant to target bad-faith
creditors") (quoting other Circuits approvingly); *Nat'l Union
Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 305
(2d Cir. 1996) (adopting decisions finding "reasonableness" a low
hurdle intended to preclude creditors acting in bad faith from
invoking § 523(a)(2)(B)); *Gerritsen Beach Invs. Ltd. v. Jemal (In
re Jemal )*, 516 B.R. 238, 245-46 (Bankr. E.D.N.Y. 2014) (adopting
*In re Bonnanzio* where a creditor surrendered property rights);
*Banner Bank v. Robertson (In re Robertson)*, 570 B.R. 352, 3762,
367 (Bankr. D. Utah 2017) (recognizing "reasonable" as a more
demanding standard than "justifiable" but then adopting *In re
Bonnanzio*).  I respectfully disagree with the courts that find
reasonable reliance is a low standard or that reliance is
reasonable absent bad faith.  While reliance in bad faith is
unreasonable, it cannot follow that reliance in good faith is
inherently reasonable.

Within the Second Circuit, "a determination of reasonable
reliance, while often a question of fact, may be disposed of on a
motion to dismiss where the pleadings demonstrate that the
plaintiff is a sophisticated investor and [her] reliance was
unjustifiable under the facts as pled." *Terra Securities*, 820 F.

17

Supp. 2d at 547; *see also Anhui Konka*, 2019 WL 6498094, at *9.
Alternatively, a motion to dismiss ought not be granted where it
is plausible that the plaintiff's reliance was reasonable in
light of the overall facts alleged.  *See USAmeriBank*, 2017 WL
4767694, at *11.

McNally here must show that her reliance on Thompson's
October 2012 letter was reasonable in light of what a prudent
landlord in the position of McNally in the circumstances of this
case would have taken, if any—not merely that her reliance was in
good faith, or that she did not rely in bad faith.  However, the
representation at issue was not that Thompson could afford to pay
rent of $600 per month but that his income did not suffice to pay
more than that each month.  Unlike a case in which the creditor
lends on the strength of the debtor's income, and asks for
verification of the income, it would be more difficult to
investigate a representation that the debtor is not making more
than what he admits he is earning by asking for verification that
the debtor has no more income.  Moreover, McNally and Thompson
were family friends (see *Compl*. Ex.4) and Thompson had served as
McNally's attorney in real estate transactions.  That bears on
whether McNally acted reasonably.  *See Hercules & Co.*, 613 A.2d
at 934.  Nothing in the *Complaint* suggests that McNally is a
sophisticated real estate investor.  In light of the facts
alleged in the *Complaint*, and what may be plausibly inferred

18

therefrom, while it may well be doubtful that McNally's reliance was reasonable in light of the factors recited in *In re Kosinski*, the court cannot find as a matter of law that her reliance was unjustified, or that it is implausible that her reliance was reasonable.  McNally ought to be permitted to proceed, but she will have to prove that her reliance was reasonable.  This will include showing that her failure to verify Thompson's inability to pay $1,800/month was reasonable, or that she had "no [reasonable] independent means of ascertaining the truth," *Anhui Konka*, 2019 WL 6498094, at *10 (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997)).

IV

COUNT III SEEKING RELIEF UNDER § 523(a)(4)

Count III alleges that Thompson violated his fiduciary duty to McNally in obtaining his tenancy at a reduced rate.  In his status as a tenant, Thompson could not have owed McNally a fiduciary duty under 11 U.S.C. § 523(a)(4).  However, paragraph 205 of the *Complaint* alleges: "From at least 1992 until November 5, 2014, the Debtor had a fiduciary duty to the Creditor and was acting as a fiduciary in his role as an attorney for the Creditor in all matters related to 52 Hamilton Street."  The *Complaint* alleges that in entering into agreements with McNally regarding 52 Hamilton Street, Thompson did not comply with D.C. Rules of Professional Conduct § 1.8(a), which provides:

19

A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:

(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) The client gives informed consent in writing thereto.

The breach of this fiduciary duty would suffice to hold any debt owed based on the breach nondischargeable if the breach rose to the level of being a defalcation with respect to the fiduciary duty and caused McNally damage. *See Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170-71 (2d Cir. 1999); *BCCI Holdings (Luxembourg), S.A. v. Clifford*, 964 F. Supp. 468, 485 (D.D.C. 1997) (treating as nondischargeable under § 523(a)(4) a debt for debtor-attorney having been unjustly enriched through double billing and billing for work that was not performed). *But see*, *e.g.*, *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1372 (10th Cir. 1996), and *R.E. America Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997), and similar decisions cited in *In re Hayes*, 183 F.3d at 170, that may reject the view that the attorney-client relationship is of a fiduciary nature for purposes of Section 523(a)(4). As held in

*Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), for purposes of 11 U.S.C. § 524(a), when the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term "defalcation" requires an "intentional" wrong, which includes not only conduct that the fiduciary knows is improper, but also reckless conduct of the kind that the criminal law often treats as the equivalent—that is, reckless conduct of the kind set forth in the Model Penal Code.  The *Complaint* adequately pleads at least reckless conduct by Thompson: as an attorney, Thompson was charged with the duty to comply with D.C. Rules of Professional Conduct § 1.8(a) and his alleged failure to do so, when damage was likely to occur, was reckless.  I will deny the motion to dismiss with respect to Count III.

V

COUNT IV CLAIM UNDER § 523(a)(6)

Counts IV and asserts that Thompson acted willfully and maliciously to injure McNally through "his torts of Slander of Title, Civil Fraud, Intentional Infliction of Emotional Distress and Abuse of Process," *Compl.* ¶ 216, through fraud, and "Unjust Enrichment," *Compl.* ¶ 227, and that McNally's claims based thereon are nondischargeable under 11 U.S.C. § 523(a)(6).

Under § 523(a)(6), willful injury exists when a debtor commits an intentional act the purpose of which is to cause

21

injury or which is substantially certain to cause injury. *See Conte v. Gautam (In re Conte)*, 33 F.3d 303, 308 (3d Cir. 1994). It is unnecessary at this stage to decide whether an objective or subjective test applies in this regard. *See Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir.), *cert. denied*, 533 U.S. 930 (2001) (subjective test applies); *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998) (objective test applies). The *Complaint* has pled facts alleging not only that injury was objectively substantially certain to arise from Thompson's acts, but also that Thompson was aware that such injury was substantially certain to arise.

For purposes of § 523(a)(6), malice exists if one acts "in conscious disregard of one's duties or without just cause or excuse." *Davis v. Melcher (In re Melcher)*, 319 B.R. 761, 776 n.18 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986); *In re Jercich*, 238 F.3d at 1209 (a "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." (citations and internal quotations omitted). *But see In re Miller*, 156 F.3d at 606 (treating malice as present if the injury was willful).

For reasons discussed below:

•      As to the torts of slander of title, abuse of process, and malicious prosecution, which have significant

22

overlap, the *Complaint* fails to state a claim upon which relief can be granted, but the allegations nevertheless support a claim for tortious interference with prospective advantage.

- The claim of fraud is potentially nondischargeable under § 523(a)(6), but invoking § 523(a)(6) regarding the claims of representational fraud appears to be unnecessary because § 523(a)(2) already applies to those claims.  Moreover, any fraud based on a false representation as to financial condition must meet the requirements of § 523(a)(2)(B).

- The *Complaint* fails to state a claim upon which relief can be grated based on intentional infliction of emotional distress.

- The *Complaint* has pled facts establishing a claim of unjust enrichment that is nondischargeable if there was a tort giving rise to the claim, but the claim appears to be duplicative of the claims for fraud and for tortious interference with prospective advantage.

- The facts pled regarding unjust enrichment support a nondischargeable claim for wrongful occupancy; and

- The *Complaint* has pled facts establishing a claim that the sanctions imposed by the Superior Court are nondischargeable.

A.

Slander of Title

The allegations regarding slander of title rely on representations allegedly made in *lis pendens* filings and in alleged statements by Thompson's prior counsel related to those filings.  In the District of Columbia, such representations enjoy an absolute privilege with respect to a slander of title claim based on representations incident to a pending action.  *See Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 348 (D.C. 2015) (distinguishing tortious interference claim); *McBride v. Pizza Hut, Inc.*, 658 A.2d 205, 207-08 (D.C. 1995).

B.

Malicious Prosecution

A notice of *lis pendens* does not give rise to the "special injury" required to sustain a malicious prosecution claim. *Havilah Real Property*, 108 A.3d at 355-56.

C.   Abuse of Process

The abuse of process claim also fails.  Knowingly bringing an action based on an unfounded claim is not by itself an abuse of process.  *Hall v. Hollywood Credit Clothing Co.*, 147 A.2d 866, 868 (D.C. 1959).  As noted in *Wood v. Neuman*, 979 A.2d 64, 76-77 (D.C. 2009):

The tort of abuse of process "lies where the legal system

24

has been used to accomplish some end which is without the
regular purview of the process, or which compels the
party against whom it is used to do some collateral thing
which he could not legally and regularly be required to
do." *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992)
(citations and internal quotation marks omitted). The
fact that a plaintiff has an ulterior motive in filing
suit is not enough to sustain a claim for abuse of
process if "there [i]s no showing that the process was,
in fact, used to accomplish an end not regularly or
legally obtainable." *Id.* at 1080; *see also Morowitz v.
Marvel*, 423 A.2d 196, 198–99 (D.C. 1980) (explaining that
an action against patient for abuse of process did not
lie where, in response to a lawsuit by physicians to
obtain payment of patient's outstanding debt, the patient
filed a malpractice suit with the ulterior motive of
coercing a settlement).

All that is alleged here is that Thompson filed an action

wrongfully alleging that he had an interest in the property and

filed a notice of *lis pendens* regarding the action, a step that

is within the regular purview of the process incident to filing

an action claiming an interest in real property even if

Thompson's ulterior motive was to coerce a settlement or to cause

McNally to sell the property to him at a reduced price.

Moreover, the goal of the attempted coercion here does not

qualify to state an abuse of process claim because that injury

was not in fact realized; McNally did not sell the property to

Thompson, nor did McNally allege any other sufficient injury from

the coercion. *See Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.

App. 1980) ("[I]n addition to ulterior motive, one must allege

and prove that there has been a perversion of the judicial

process and achievement of some end not contemplated in the

regular prosecution of the charge.").

D.

Tortious Interference Claim

Statements in litigation regarding real property, allegedly made in bad faith, and the filing of a notice of *lis pendens* can support a tortious interference claim (a claim for tortious interference with prospective advantage). *Havilah Real Property*, 108 A.3d at 345 ("If the underlying litigation is found not to have been pursued in good faith, then no privilege attaches to the underlying litigation, and a defendant can be liable for all damages proximately caused by that litigation, including damages occasioned by the filing of *lis pendens* related to that litigation."). The Court of Appeals characterizes this as a "conditional privilege rule" which "provides an adequate remedy to parties that have suffered harm as a result of litigation over real property interests filed in bad faith." *Id.* at 339, 345.

The elements of a claim for tortious interference with prospective advantage are:

> (1) the existence of a valid business . . . expectancy;
> (2) knowledge of the . . . expectancy on the part of the interferer;
> (3) intentional interference inducing or causing a breach or termination of the . . . expectancy; and
> (4) resultant damage.

*Precision Contracting Sols., LP v. ANGI Homeservs., Inc.*, 415 F. Supp. 3d 113, 121-22 (D.D.C. 2019). "[T]he 'motive' behind [any]

26

interference is the key consideration." *Id.* at 122 (quoting *Havilah Real Prop. Servs.*, 108 A.3d at 346). "[B]usiness expectancies, not grounded on present contractual relationships but which are *commercially reasonable to anticipate*, are considered to be property and therefore protected from unjustified interference." *Carr v. Brown*, 395 A.2d 79, 84 (D.C. 1978) (emphasis added).

McNally's allegations are sufficient to permit such a claim of tortious interference to proceed. Moreover, the allegations of the *Complaint* establish both willful and malicious injury within the meaning of § 523(a)(6). Thus, the court will dismiss the claims for slander of title, abuse of process, and malicious prosecution, but McNally may proceed to attempt to prove a claim of tortious interference with prospective advantage, to include showing that litigation filings against McNally were made in bad faith. Thompson will have a fair opportunity to respond to this claim in his answer. See *Flakker v. Flakker (In re Flakker)*, Adv. Pro. No. 14-10037, 2015 WL 4624545, at *4 (Bankr. D.D.C. Aug. 3, 2015) (deeming complaint amended).

E.

Civil Fraud

The allegations regarding civil fraud are the same as those alleged in support of the claims of nondischargeability under

27

§ 523(a)(2).  The Supreme Court recently held that a fraud claim

may be nondischargeable under the terms of either 11 U.S.C.

§§ 523(a)(2) or 523(a)(6).  *Husky Int'l Elecs., Inc. v. Ritz*, 136

S. Ct. 1581, 1588 (2015).  However, *Husky* did not address whether

a fraud claim based upon an alleged oral misrepresentation of

financial condition may be brought under § 523(a)(6), even though

§ 523(a)(2) expressly excludes such claims.

The prevailing view prior to *Husky* was that the writing

requirement of § 523(a)(2)(B) could not be avoided by reliance on

§ 523(a)(6).  *See, e.g.*, *Berkson v. Gulevsky (In re Gulevsky)*,

362 F.3d 961, 964 (7th Cir. 2004) (citing other cases).  Some

cases since *Husky* have questioned the extent to which *Gulevsky*

remains good law.  *See, e.g.*, *Groom v. Krook (In re Krook)*, 615

B.R. 479, 487-88 (Bankr. N.D. Ill. 2020); *Lenchner v. Korn In re

Korn)*, 567 B.R. 280, 315 (Bankr. E.D. Mich. 2017); *Michigan

Unemployment Ins. Agency v. Kozlowski (In re Kozlowski)*, 547 B.R.

222, 233-34 (Bankr. E.D. Mich. 2016), *aff'd*, 218 F. Supp. 3d 553,

562 (E.D. Mich. 2016).  However, none of those cases squarely

held that an oral misrepresentation as to financial condition may

support a claim under § 523(a)(6).  I see no conflict between

*Gulevsky* and *Husky* on this issue and find that *Gulevsky's* narrow

holding, that a claim based on an oral misrepresentation

regarding a debtor's financial condition may not be brought under

§ 523(a)(6), remains good law.  The requirement of a writing in

28

§ 523(a)(2)(B) that the creditor reasonably relied upon a representation of financial condition be in writing in order for the claim based on that representation to be nondischargeable can not be avoided by asserting that the claim is nondischargeable as a fraud claim under § 523(a)(6) with no requirement of the representation being in writing and with no requirement that the reliance have been reasonable.

It appears that nothing would be gained by declaring such a debt shown to be nondischargeable under § 523(a)(2)(B) and to be additionally nondischargeable under § 523(a)(6).  Nevertheless, I will assume that McNally is entitled to show that the claims are nondischargeable under § 523(a)(6) once the claims are declared nondischargeable under § 523(a)(2)(B).  As in the case of § 523(a)(2)(B) claims, it does not appear that anything would be gained by McNally from my declaring a debt nondischargeable under § 523(a)(2)(A) to be nondischargeable under § 523(a)(6) as well, as no tort has been pled for fraud that is addressed by § 523(a)(6) but not § 523(a)(2)(A).  However, I will assume that McNally is entitled to show that the claims are nondischargeable under § 523(a)(6) as well.

An injury claimed under § 523(a)(6) must be "willful and malicious".  11 U.S.C. § 523(a)(6).  The *Complaint* adequately pleads that in making his false representations to McNally, Thompson willfully injured McNally, who alleges that Thompson

knew at the time he made his allegedly false representations that
McNally would be harmed, thereby by losing income from rent at
market rate, and that it was certain, or at minimum substantially
certain, that McNally would suffer this harm.  These allegations
suffice to claim that Thompson knew that his allegedly false
representations were at least substantially certain to cause
McNally harm and thus establish willful injury under § 523(a)(6).
As to malice, the allegations show malice was present because
Thompson's conduct was without just cause or excuse.

F.

Intentional Infliction of Emotional Distress

The *Complaint* does not plausibly allege a claim of
intentional infliction of emotional distress under District of
Columbia law.  Such a claim must allege:

> (1) extreme and outrageous conduct on the part of
> the defendant which
> (2) intentionally or recklessly
> (3) causes the plaintiff to suffer severe
> emotional distress.

*Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015)
(quoting *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C.
2013) (brackets omitted)); *Competitive Enter. Inst. v. Mann*, 150
A.3d 1213, 1260 (D.C. 2016) (quoting *Williams v. District of
Columbia*, 9 A.3d 484, 493–94 (D.C. 2010)).

"The conduct must be 'so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of

30

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Competitive Enter. Inst.*, 150 A.3d at 1260 (quoting *Williams*, 9 A.3d at 494)); *Doe*, 116 A.3d at 1269 (standard on a motion to dismiss).  The conduct must be materially more outrageous than the conduct alleged here.  *See, e.g., Wood v. Neuman*, 979 A.2d 64, 77-78 (D.C. 2009) (finding dispute over property insufficient); *Carey v. Edgewood Mgmt. Corp.*, 754 A.2d 951, 953, 955-56 (D.C. 2000) (finding landlord barring tenant's family members from visiting insufficient); *Bown*, 601 A.2d at 1079 (finding pursuit of meritless litigation for possession insufficient).  *See also Ortberg*, 64 A.3d at 164 (citing examples of outrageous conduct); *Homan v. Goyal*, 711 A.2d 812, 818-19 (D.C. 1998) (death threats); *Drejza v. Vaccaro*, 650 A.2d 1308, 1312-14 (police interrogation of rape victim).  The court considers the overall context of the conduct, including any relationship between the parties.  *Ortberg*, 64 A.3d at 163 (quoting *Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621, 641 (D.C. 1995)).

While the parties knew and had conducted business with each other for many years, Thompson was not in a position of authority over McNally, such as an employer or police officer, that could justify finding a lesser degree of offensive behavior to be outrageous.  Litigation pursued with the intended effect of threatening, annoying, or cajoling a party into taking

31

detrimental action cannot plausibly be sufficiently outrageous.

In addition, as noted in *Competitive Enter. Inst.*, 150 A.3d at 1261, a plaintiff must meet "the high bar of 'severe emotional distress,' which requires a showing beyond mere 'mental anguish and stress' and must be 'of so acute a nature that harmful physical consequences are likely to result.'" (quoting *Armstrong v. Thompson*, 80 A.3d 177, 189-90 (D.C. 2013)).[7] *See also Ortberg*, 64 A.3d at 164 (quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007)).  Paragraphs 167 and 168 of the *Complaint* allege that McNally has experienced severe emotional distress as a direct and proximate result of Thompson's conduct, and that McNally "sought and is still receiving treatment" for that severe emotional distress.  This lacks sufficient specificity to establish the requisite degree of injury.

The claim must be dismissed.

---

[7] Courts disagree on whether emotional distress represents a personal injury for which the bankruptcy court lacks authority to liquidate a claim.  *See, e.g.*, *Parker v. Miller (In re Miller)*, 589 B.R. 550, 563 (Bankr. S.D. Miss. 2018) (is personal injury under the "middle" approach of *Abraham v. Smith*, 550 B.R. 314, 321-22 (N.D. Miss. 2016)); *Leathem v. von Volkmar (In re von Volkmar)*, 217 B.R. 561, 564 (Bankr. N.D. Ill. 1998) (citing, *inter alia*, *Littles v. Lieberman (In re Littles)*, 75 B.R. 240, 242 (Bankr. E.D. Pa. 1987)) (is personal injury)).  *But see Massey Energy Co. v. West Virginia Consumers for Justice*, 351 B.R. 348, 351 (E.D. Va. 2006) (citing, *inter alia*, *Priest v. Interco, Inc. (In re Interco, Inc.)*, 135 B.R. 359 (Bankr. E.D. Mo. 1991) (not personal injury)).  I need not reach this issue as I conclude that McNally has not stated such a claim to liquidate.

G.

Unjust Enrichment

McNally's claim of unjust enrichment rests on the following allegations (*Compl.* ¶¶ 146-155): From July 2015 until December 2017, Thompson resided at 52 Hamilton Street without paying the $600.00 per month rent.  McNally made numerous attempts through the legal system to remove Thompson from 52 Hamilton Street to no avail.  McNally sued Thompson in the Superior Court of the District of Columbia in 2015 (after Thompson had sued her alleging that he had an ownership interest in the property).  Throughout the Superior Court litigation, Thompson intentionally obstructed and delayed the proceedings by filing frivolous pleadings, ignoring orders of the Superior Court and intentionally failing to cooperate in discovery, with the intent and purpose of continuing to reside at 52 Hamilton Street for free.  Thompson thereby intended to prevent McNally from deriving any rental income from the property while increasing the amount of time that he could reside at 52 Hamilton Street without paying rent, and his conduct proximately caused McNally to lose rental income at market rate from July 2015 through December 2017.  Thompson's conduct to obstruct and delay the Superior Court proceedings was without any just cause or excuse, and its purpose was to delay the Superior Court proceedings as long as possible before filing a bankruptcy petition so that he would never have

to compensate McNally for residing at the property without paying rent.

These allegations present three issues. First, there is an issue of whether an unjust enrichment claim has been adequately pled under District of Columbia law, which might be the case if the lease could be rescinded based on the allegations of fraud made earlier in the *Complaint.* Second, there is an issue of whether, or to what extent, the claim of unjust enrichment is nondischargeable (and in that regard I conclude that this turns on establishing claims for either fraud or tortious interference with prospective advantage, and that suggests that the unjust enrichment claim is duplicative of those claims and unnecessary). Third, there is an issue of whether (as discussed in part H, below) the allegations regarding unjust enrichment further support a claim based on the tort of wrongful occupancy (that could likewise support the nondischargeability of the unjust enrichment claim, to the extent it covers the same time period, and would similarly suggest that the unjust enrichment claim is duplicative and unnecessary).

*Issue of Whether an Unjust Enrichment Claim Has Been Adequately Pled.* The first issue is whether the quoted allegations support a claim for unjust enrichment. The elements needed to prove a claim of unjust enrichment in the District of Columbia are:

34

> (1) the plaintiff conferred a benefit on the defendant;
> (2) the defendant retains the benefit; and
> (3) under the circumstances, the defendant's retention
> of the benefit is unjust."

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d
1055, 1076 (D.C. 2008). A claim for unjust enrichment has been
characterized as a claim based on a quasi contract, where
circumstances are such that justice warrants a recovery as though
there had been a promise. *Jordan Keys & Jessamy, LLP v. St. Paul
Fire & Marine Ins. Co.*, 870 A.2d 58, 64 (D.C. 2005). The remedy
imposes upon the parties what the court may assume would have
been the agreement of the parties if the situation had been
anticipated and provided for. However, a "claim of unjust
enrichment . . . is based on equitable principles, and it is not
contingent upon the niceties of the law of contracts. Indeed, it
is not a claim of breach of contract at all." *Id.*

If the lease agreement, for rent of $600 per month, was
valid and cannot be set aside as unenforceable, McNally did not
confer a benefit on Thompson for which there is a need to impose
an obligation on Thompson in order to avoid unjust enrichment.
*See Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556
(D.C. 2016); *Jordan Keys & Jessamy*, 870 A.2d at 64 ("One who has
entered into a valid contract cannot be heard to complain that
the contract is unjust, or that it unjustly enriches the party
with whom he or she has reached agreement." (footnote omitted));
*Harrington v. Trotman*, 983 A.2d 342, 347 (D.C. 2009) (explaining

35

that the existence of a contract bars an unjust enrichment claim,
"[u]nless there is a basis to set aside a contract as
unenforceable").  Thompson was already obligated to McNally for
his occupancy of the property.  McNally had a right to treat
Thompson as continuing as a tenant, to receive from Thompson the
$600 rent he had agreed to pay, and to seek to evict him for
failure to pay that rent.  Alternatively, she had the right to
take steps to terminate his right to occupancy as a tenant at
sufferance, and then to seek to evict him, with Thompson liable
for damages for the period after his tenancy was ended and until
he vacated the property (and liable for unpaid rent due during
his tenancy).  *See Fett v. Sligo Hills Dev. Corp.*, 172 A.2d 511,
514 (Md. 1961) ("An occupancy rightful because permissive becomes
tortious when a proper demand to vacate is ignored and it is then
the occupants become trespassers and damages for their wrongful
occupancy begin to accrue.  1 Restatement, Torts, Sec. 158(b),
and comment k thereof; Sec. 171, and comment d thereof.").  The
existence of those remedies (assuming that the lease could not be
set aside as unenforceable) demonstrates that Thompson did not
receive anything for free: he still had a liability for occupancy
of the property, either as a rent obligation as a tenant for the
period prior to termination of the tenancy or as damages for
wrongful occupancy once the lease was terminated.  There is no
need to imply an obligation pursuant to the equitable doctrine of

unjust enrichment when Thompson's conduct already gives rise to an obligation pursuant to the terms of his lease or pursuant to his later obligation to vacate the property.

However, Fed. R. Civ. P. 8(d)(2) allows pleading alternative claims for relief. Although "there can be no claim for unjust enrichment when an express contract exists between the parties," *Schiff v. Am. Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997), "[c]ourts in this District have found that a plaintiff should be permitted to plead both breach of contract and unjust enrichment." *The Scowcroft Grp., Inc. v. Toreador Res. Corp.*, 666 F.Supp.2d 39, 44 (D.D.C. 2009). Elsewhere in the *Complaint*, McNally asserts that the lease on terms favorable to Thompson was procured by Thompson's fraud. "A claim of unjust enrichment may survive a motion to dismiss . . . when the validity of the contract is in doubt or uncertain or where an express contract exists that does not govern exclusively the obligations or rights of the parties at issue." *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 135 (D.D.C. 2009). Finally, as observed in *Lee v. Foote*, 481 A.2d 484, 485–86 (D.C. 1984) (citations omitted):

> When an express contract has been repudiated or materially breached by the defendant, restitution for the value of the non-breaching party's performance is available as an alternative to an action for damages on the contract. Restitution for material breach or repudiation of a contract is based upon the principle of unjust enrichment.

37

Accordingly, it is appropriate not to dismiss the claim for
unjust enrichment.

   *Fraud as a Basis for Invoking Unjust Enrichment*.  McNally
has already asserted a claim for fraud, seeking damages for the
period of Thompson's occupancy from February 2005 until June
2015.  *See Compl*. ¶ 158 (lost market rate rent from February 2005
through June 2015 as a direct and proximate cause of her reliance
on Thompson's false representations, ¶ 199 (October 2012 false
representation as to financial condition), and ¶ 221 (reduced
rent for October 2012 through June 2015 based on false
representations as to financial condition).  However, those
allegations are outside the time frame of the alleged unjust
enrichment (July 2015 to December 2017).  The rent had allegedly
been set at $600 per month based on the fraud, and as a holdover
tenant, Thompson may have been entitled to continue occupying the
property for that rent.  If McNally can show such fraud, she
would be entitled to rescind the agreement for rent at $600 per
month, based on the agreement having been obtained by fraud, and
sue for rent at fair market as an unjust enrichment remedy.
However, if the lease were rescinded based on fraud, the damage
proximately caused by fraud would be limited to the difference
between the lease rent of $600 per month (which Thompson was
required to pay) and market rent of $1,800 per month, a
difference of $1,200.  The balance of $600 would be proximately

38

caused by the failure to pay rent.

*Fraud or Other Intentional Torts as a Basis for Finding Unjust Enrichment Nondischargeable*.  As discussed below, a claim for unjust enrichment must arise from an intentional tort in order to be nondischargeable under § 523(a)(6).  Further, if unjust enrichment is made a viable claim based on treating the lease as unenforceable based on fraud, it is nondischargeable under § 523(a)(6) only if the injury was inflicted intentionally and with malice, and, to the extent that the claim rests on Thompson's representations as to financial condition, McNally must show that the claim is nondischargeable under § 523(a)(2)(B).

The rent obligation of $600 per month is dischargeable because § 523(a)(6) does not apply to a failure to pay rent standing by itself.  A failure to pay rent is a breach of contract, but a breach of contract, standing by itself, provides no basis for a finding of nondischargeability under § 523(a)(6). *See Tari v. Huggins (In re Huggins)*, 252 B.R. 567, 569 (Bankr. M.D. Fla. 2000)*.  See also Tiffany Square Family v. Williams (In re Williams)*, 362 B.R. 838, 840 (Bankr. N.D. Ohio 2006).

I adhere to the view that I stated in *Simu v. Carvalho (In re Carvalho)*, 2016 WL 2930466, Adv. Pro. No. 16-10001 (Bankr. D.D.C. May 13, 2016):

> When parties enter into a contract it is in the context
> of contract law, which recognizes that a party is free

39

knowingly not to perform a contract that proves
disadvantageous for that party (absent an order for
specific performance), with the consequence being a
requirement of compensating the other party for losses
resulting from the breach. Accordingly, a breach of
contract is generally not "malicious" in the context of
contract law which contemplates that a breach may occur
subject to compensatory damage remedies. The other
party's contract rights are fully preserved despite the
breach, as the right to sue for damages remains in place,
and thus there cannot be any injury to the other party's
property (its contract rights). Nor is there injury to
the other party, as it is only entitled to whatever
rights it had under the contract.  For these reasons,
generally debts for breach of contract, even an
intentional breach of contract, are not excepted from
discharge under section 523(a)(6). *See In re Glatt*, 315
B.R. 501, 511 (Bankr. D.N.D. 2004), citing *Cutler v.
Lazzara (In re Lazzara)*, 287 B.R. 714, 722 (Bankr. N.D.
Ill. 2002), and *Petralia v. Jercich (In re Jercich )*, 238
F.3d 1202, 1205 (9th Cir. 2001).

*See also Taylor v. Snyder (In re Snyder)*, 542 B.R. 429, 441 (N.D.

Ill. 2015) (citing *First Weber Group, Inc. v. Horsfall*, 738 F.3d

767, 773 (7th Cir. 2013)); *cf. BMW Bank of N. Am. v. Stone (In re

Stone)*, Adv. Pro. No. 18-10001, 2018 WL 6060295, at *4 (Bankr.

D.D.C. Nov. 19, 2018) (quoting *Lockerby v. Sierra*, 535 F.3d 1038,

1044 (9th Cir. 2008)) (requiring a breach of contract claim to be

linked to tortious conduct under state law to be cognizable under

§ 523(a)(6)); *Palmour v. Budd (In re Budd)*, Adv. Pro. No. 16-

10039, 2018 WL 312246, at *2 (Bankr. D.D.C. Jan. 3, 2018)

(citing, *inter alia*, *Wish Acquisition, LLC v. Salvino (In re

Salvino)*, 373 B.R. 578, 589-91 (Bankr. N.D. Ill. 2007), *aff'd*,

No. 07 C 4756, 2008 WL 182241 (N.D. Ill. 2008)).

The dischargeable character of the rent obligation does not

40

change based on the possibility that Thompson may have
deliberately failed to pay the rent.  A deliberate failure to
perform on a contract, without more, is not a tort, and does not
make the debt nondischargeable under § 523(a)(6).  In light of
the relation between damages for breach of contract and damages
for unjust enrichment, I extend this rule to damages for unjust
enrichment; they must arise from an intentional tort to be
nondischargeable under § 523(a)(6).  Thus only the portion of
McNally's alleged damages that were proximately caused by fraud
or other intentional tort may be nondischargeable in the context
of her unjust enrichment claim; damages proximate to Thompson's
failure to pay rent cannot be nondischargeable.

As discussed previously, Thompson's conduct in the Superior
Court and in filing the notice of *lis pendens* may have
constituted tortious interference with prospective advantage.
The resultant delay in Thompson's vacating the property may have
delayed McNally's renting the property at market rent or selling
the property.  Lost rents during the period of delay could well
be part of McNally's damages, and the portion of such loss
proximately caused by tortious interference could support a
nondischargeable claim for unjust enrichment.  However, treating
such a claim, or one of wrongful occupancy as discussed below, as
one of unjust enrichment would appear to add nothing to the
recovery McNally may be entitled to receive by reason of her

41

claim of tortious interference with prospective advantage itself.

H.

Claim for Wrongful Occupancy

If Thompson continued to occupy the property after his right to do so had come to an end, McNally is entitled to sue to recover damages for wrongful occupancy. *See Fett v. Sligo Hills Dev. Corp.*, 172 A.2d at 514. Any claim for damages for wrongful occupancy would be a tort claim nondischargeable under § 523(a)(6) if Thompson knew that McNally was being deprived of the right to rent the property at market rent or achieve a sale and if he failed to vacate the premises with malice—that is, without just cause or excuse. *See An v. Kwon (In re An)*, No. 2:14-AP-01739-BB, 2016 WL 4077291, at *5 (B.A.P. 9th Cir. July 27, 2016), *aff'd*, 710 F. App'x 771 (9th Cir. 2018).[8]

I take judicial notice of McNally's *Motion for Possession of 52 Hamilton Street, NW*, filed on December 4, 2017, in *McNally v. Thompson*, Case Number 2015 CA 000234 B in the Superior Court. It shows that McNally alleged that she gave Thompson a 60-day notice to quit on October 3, 2017, with that notice purporting to be effective to terminate Thompson's occupancy rights as of the end

---

[8] As explained in *In re An*, *id.* at *4: "Under California law, all individuals have a general (non-contractual) duty not to interfere with another's right to possession of real property . . . . An's wrongful interference with Kwon's right to possession of the office building violated this general duty and thus was tortious under California law." (citations omitted).

of December 2, 2017.  Accordingly, prior to December 3, 2017,
Thompson was a tenant at sufferance with a right to occupy the
property.  If the notice to quit was effective to terminate the
tenancy, then on and after December 3, 2017, and until Thompson
vacated the property, any occupancy by Thompson was wrongful and
McNally is entitled to recover damages which might be
nondischargeable.  The *Complaint* asserts a claim for the period
ending in December 2017 but fails to allege when in December 2017
Thompson vacated the property.  If Thompson vacated the property
before December 3, 2017, he may raise that as a defense to the
claim for wrongful occupancy.

I.

Claim for Sanctions Imposed by the Superior Court

The Superior Court imposed sanctions against Thompson.  A
plaintiff may bring a claim to declare court-imposed sanctions as
nondischargeable under § 523(a)(6) where the sanctions result
from conduct reflecting bad faith or conduct otherwise resulting
in willful and malicious injury.  *See Shcolnik v. Rapid
Settlements Ltd. (In re Shcolnik),* 670 F.3d 624, 629-30 (5th Cir.
2012) ("Shcolnik's behavior [sanctionably pursuing litigation]
resulted in willful and malicious injury if his claims of
ownership were made in bad faith as a pretense to extract money
from the Appellants."); *First Am. Title Ins. Co. v. Crawford (In
re Crawford)*, Adv. Pro. No. 14-10035, 2016 WL 502014, at *5

43

(Bankr. D.D.C. Feb. 8, 2016); *cf. In re Flakker*, 2015 WL 4624545,
at *4 (citing *Britt v. Nave (In re Nave)*, Adv. Pro. No. 09-10033,
2010 WL 732250, at *3 (Bankr. D.D.C. Feb. 25, 2010) (finding
merit to a claim under § 523(a)(6) for sanctions imposed for
intentional misconduct that harmed the plaintiff by forcing the
plaintiff to incur costs and attorney's fees)); *In re Nave*, 2010
WL 732250, at *3 ("The mere fact that a litigation sanctions
award is not an intentional tort is no bar to applying (a)(6).").
The *Complaint* alleges that Thompson "intentionally engaged in bad
faith conduct in order to increase the costs and attorney fees of
the Creditor" (*Compl.* ¶ 107), and that the bad faith conducted
included "[i]ntentionally delaying and obstructing discovery in
violation of the Superior Court Rules of Civil Procedure by
failing to respond to discovery requests, failing to produce
responsive documents and failing to supplement discovery
responses" (*Compl.* ¶ 110(a)), and filing a frivolous motion to
disqualify McNally's counsel (*Compl.* ¶¶ 110(d), 111, and 113).[9]

The sanctions in the Superior Court order, *Compl.* Ex. 12,
with respect to the failure to comply with discovery consisted of

---

[9]   Paragraphs 111-113 of the *Complaint* refer to a February
7, 2018 proceeding, and refer to Judge Rankin's order of November
1, 2018, attached as Exhibit 12, as embodying the oral orders at
that hearing granting two of the motions for sanctions.  However,
Judge Rankin's order refers to a Superior Court hearing held on
October 19, 2017, at which he granted those two requests for
sanctions.  I will treat the discrepancy as an apparent error,
and will treat the *Complaint* as dealing with the oral rulings of
October 19, 2017, not November 1, 2018.

an award of $7,500 for Thompson's failure to supplement his
responses to McNally's second request for production of documents
or answer her third request for production of documents, an award
of $7,338 to pay for the costs and attorney's fees for his second
deposition because defendant failed to produce financial
documents relevant to his first deposition, and $5,000 for a bad
faith motion to disqualify McNally's counsel.  The allegations of
intentional delay and obstruction allege a willful injury, and
with there having been an intention to delay and obstruct, the
conduct was malicious (without just cause or excuse).[10]

In addressing the third instance of sanctionable conduct,
Judge Rankin awarded $5,000 upon finding that the "defendant's
motion for disqualification of attorney Billy Ponds . . . was
made in bad faith."  This directly supports the allegation of
such bad faith conduct in paragraph 113 of the *Complaint*.
McNally will need to show at trial that Thompson pursued such
conduct and that it was pursued in bad faith or was otherwise
willful and malicious.  *See In re Shcolnik,* 670 F.3d at 629-30.
I will deny the motion to dismiss with respect to the sanctions
awarded by the Superior Court.

---

[10] Rule 37(d)(3) permitted an award of fees "unless the
failure was substantially justified or other circumstances make
an award of expenses unjust."  The Superior Court found that the
first instance of failing to comply with discovery was without
substantial justification, and implicitly included a similar
finding as to the second instance.

VI

COUNT V CLAIM UNDER § 727(a)(2)

Section 727(a)(2) denies discharge where a debtor transfers property with the "intent to hinder, delay, or defraud a creditor" in the year prior to filing a bankruptcy petition.

McNally makes the following allegations (*Compl.* ¶¶ 124-131): On March 10, 2017, Thompson purchased real property, specifically, a residential home located at 1405 Kennedy Street, N.W., Washington, D.C, 20011 ("1405 Kennedy Street") for $875,000.00, using a substantial part of his existing assets to make the down payment.  On April 23, 2018, less than a year before he filed his bankruptcy petition on March 5, 2019, Thompson executed a No Consideration Deed transferring 1405 Kennedy Street, which was solely in his name, to himself and his wife, Debbie Ann Bromfield-Thompson, as tenants by the entirety.

McNally alleges that this transfer was made to hinder, delay, and defraud creditors.  Thompson contends that the *Complaint* fails to show how Thompson intended to "defraud" or "hinder" a creditor of the bankruptcy estate.

The phrase "to hinder, delay, or defraud" is of longstanding interpretation and requires an actual intent to defraud.  *See Wreyford v. Wreyford (In re Wreyford)*, 505 B.R. 47, 56 (D.N.M. 2014) (citing then quoting, *inter alia*, *Coder v. Arts*, 213 U.S. 223, 242 (1909)).  Because direct evidence of fraudulent intent

46

is rare, the presence of one or more badges or indicia of fraud—including the lack of consideration, transfer to a family member, retention of possession, and the impact of the transfer on a defendant's financial condition—may indicate such intent. See *id.* at 58-59 (citing eleven badges); *Lafarge N. Am., Inc. v. Poffenberger* (*In re Poffenberger*), 471 B.R. 807, 816 (Bankr. D. Md. 2012) (quoting *Zanderman, Inc. v. Sandoval* (*In re Sandoval*), No. 96-2391, 1998 WL 497475, at *2 (4th Cir. Aug. 10, 1998) ("The presence of just one of the above listed factors can warrant a court's conclusion that a transfer was fraudulently made, and, certainly, the presence of several factors 'can lead inescapably to the conclusion that the debtor possessed the requisite intent.'" (quoting *In re Penner*, 107 B.R. 171, 176 (Bankr. N.D. Ind. 1989)).

Under District of Columbia law, Thompson's transfer of the property interest to his wife placed 1405 Kennedy Street beyond the reach of those creditors who held claims against Thompson for which Bromfield-Thompson was not liable. *See Webster v. Hope (In re Hope)*, 231 B.R. 403, 412 (Bankr. D.D.C. 1999); *Morrison v. Potter*, 764 A.2d 234, 236-37 (D.C. 2000) (citing *Finley v. Thomas*, 691 A.2d 1163, 1166 (D.C. 1997). Thompson's schedules reflect that 1405 Kennedy Street is worth $950,000 and that it is encumbered by a lien totaling $781,451. Thompson's schedules reflect assets other than his interest in 1405 Kennedy Street

47

that total $77,573, which would not suffice to pay his priority

tax debts (for which he alone is liable) that total $275,368 plus

various unsecured nonpriority debts for which he is solely

liable.  The allegation in the *Complaint* that the transfer of the

property into a tenancy by the entireties was made with the

intent to hinder, delay, and defraud creditors is thus entirely

plausible.  Therefore, the *Motion to Dismiss* will be denied with

respect to Count V.

VII

COUNT VI CLAIM UNDER § 727(a)(4)

This count seeks to deny discharge under § 727(a)(4) by

alleging that Thompson filed inaccurate schedules and reports

with respect to his property in Jamaica.  McNally, *Compl*. ¶¶ 245-

255, alleges that unscheduled property in which Thompson has a

100% interest is worth approximately $597,000, far more than the

$150,000 - $175,000 Thompson has acknowledged in a Periodic

Report.

Section 727(a)(4)(A) denies discharge to a debtor who

"knowingly and fraudulently" "ma[kes] a false oath or account"

"in or in connection with [his] case."  § 727(a)(4)(A); *see also*

*Searles v. Riley* (*In re Searles*), 317 B.R. 368, 377 (B.A.P. 9th

Cir. 2004) ("Denial of discharge under § 727(a)(4)(A) requires

proof, by a preponderance of the evidence, that: (1) there was a

false statement under oath or penalty of perjury; (2) made

48

knowingly and fraudulently; and (3) regarding a material fact."). A knowingly-made material false statement or omission in a schedule is an established basis for denying discharge under this section. *See Searles*, 317 B.R. at 377; *Poffenberger*, 471 B.R. at 820-21; *Aetna Ins. Co. v. Nazarian* (*In re Nazarian*), 18 B.R. 143, 146-47 (Bankr. D. Md. 1982).

Thompson challenges McNally's appraisal of the property as a reason to dismiss this claim. However, the valuation of the property and the validity of appraisals with respect to the valuation are disputed matters of fact to be determined at trial. This dispute is not a basis for dismissal at this stage. Similarly, Thompson's intent regarding any material misstatement or omission that may be found would also a matter to be resolved at trial. *See Arc Constr. Servs., Inc. v. Lusane* (*In re Lusane)*, Adv. Pro. No. 12-10022, 2013 WL 662955, at *1 (Bankr. D.D.C. Feb. 25, 2013). Therefore, the motion to dismiss must be denied with respect to Count VI.

## VIII

### CONCLUSION

In light of the foregoing, it is

ORDERED that the *Motion to Dismiss* is denied with respect to Count I (§ 523(a)(2)(A)), Count II (§ 523(a)(2)(B)), and Count III (§ 523(a)(4)).  It is further

ORDERED that with respect to Count IV, seeking to establish

49

the existence of a claim that is nondischargeable under 11 U.S.C.
§ 523(a)(6):

- the claims of slander of title, malicious prosecution,
  and abuse of process are dismissed, but

- the *Complaint* is deemed to have pled a valid claim
  (which will not be dismissed) for tortious interference
  with prospective advantage arising from Thompson's
  filing of the notice of *lis pendens* and pursuit of a
  claim of an ownership interest in McNally's 52 Hamilton
  Street property;

- the claim based on civil fraud is allowed to remain
  pending (albeit appearing to be duplicative of the
  claims under § 523(a)(2)) but with the clarification
  that any civil fraud based on a representation as to
  financial condition must be shown to be
  nondischargeable under § 523(a)(2)(B);

- the claim of intentional infliction of emotional
  distress is dismissed;

- the claim of unjust enrichment (including any claims
  for unjust enrichment based on failure to pay rent
  established by agreement) is dismissed except that
  McNally may pursue a claim of unjust enrichment if
  either (1) Thompson's lease of 52 Hamilton Street is
  set aside as procured by fraud, but to the extent that

the claim rests on Thompson's representations as to
financial condition, McNally must show that the claim
of fraud is nondischargeable under § 523(a)(2)(B),
(2) McNally establishes a claim for tortious
interference with prospective advantage, or (3) McNally
establishes a claim for wrongful occupancy;

- the *Motion to Dismiss* is denied with respect to the
  claim based on sanctions imposed by the Superior Court;
  and

- McNally may pursue a claim for wrongful occupancy of
  the property (deemed to have been pled but not
  identified as such).

It is further

ORDERED that the *Motion to Dismiss* is denied with respect to
Count V (§ 727(a)(2)), and Count VI (§ 727(a)(4)).

[Signed and dated above.]

Copies to: All counsel of record.